Curia, per

Wardlaw, J.
By the common law, an estate of freehold could not be conveyed to commence in fu-turo, because it could not be created without livery of seisin. This reason does not apply to conveyances operating by force of the statute of uses ; but of these, some are by their form incapable of operation, without an immediate transmutation of possession. Thus, a lease and release of a freehold to commence in futuro would be void; because, although a lease might serve to create a term so to commence, a release can be made only to a tenant already in possession. The question has seldom arisen as to a bargain and sale, because the instruments presenting it have rarely been enrolled ; but upon a bargain and sale of a fee to vest in futuro, an use in the bargainee would arise, -which would be executed by the statute ; (Shep. Touch, by Preston, 511 ; Bac. Read.63.) the bargainor in the mean time, either holding a fee to be determined by a springing use, or else having by the operation of the statute the estate reserved by him converted into a term or life estate, according to the future period fixed, with remainder to the bargainee, (1 Yentr. 137-9.) so that if, as seems to be to understood by some of our cases, recording of 'a bargain and sale be, in this State, equivalent ,to enrollment, * *165 a bargain and sale, upon valuable consideration, if duly recorded, would, for the conveyance of a freehold in futuro, stand here upon equal footing with a covenant to stand seized to uses. Both of these forms of conveyance were, as well as lease and release, in use in this State before our Act of 179S, legalizing a prescribed form of conveyance, (Ruggs and Ellis, 1 Bay, 107,) and are by the provisions of that Act yet effectual. ( Craig vs. Pinson, Cheves, 272.) As to a covenant to stand seized, there has never been a doubt since it was recognized as an effectual form of conveyance, that by it, when made upon proper consideration, and properly drawn, the covenantor might covenant to stand seized to his own use for a term, or for his life, and afterwards to the use of the covenantee; and that the uses which would arise from the covenant would be executed by the statute of uses. The leading cases on the subject (of which see Wilkinson vs. Tranmar, Willes, 682 ; Milburn vs. Salkeld, Ib. 673; Doe vs. Wittingham, 4 Taunt. 20.) have been as to the consideration on which the deeds were made, and the sufficiency of the words to express the covenant. It seems to have been considered, that.if a money consideration be expressed in a deed, which has the form of a covenant to stand seized, no use will arise, even *166 although the covenantee be shown to be the son of the covenantor, unless the deed be enrolled, so as to be effectual as a bargain and sale ; for expressumfacit cessare taciturn, (Shep. Touch, by Preston, 513,) but it is clearly otherwise if the deed be expressed to be in consideration of money, and that the covenantee is the son, or be without any consideration expressed, and a proper one be averred and proved. (Mildmay's case, 1 Co. 175 a. 7 Bro. Par. Ca. 70 ; 3 T. R. 474.)
In the present case, by the deed in question, John Wilson, by words in presentí, gives, grants and releases unto his “ son, Samuel Wilson, his heirs and assigns,” the land described, with its appurtenances, “ At my death, to have and to hold,” &c. with a clause of warranty. Is it proper to construe the deed to be a covenant to stand seized, so as to hold that by it the father had an estate for life, with a vested remainder in his son ? The plaintiff insists upon this; but rather than that the deed should be considered void, maintains that an estate in fee to the son was conveyed by the premises ; that the words at my death, belong to the habendum, and not to the premises ; and that a repugnant habendum cannot divest an estate previously conveyed by the premises ; relying upon Ingram and Porter, Harper, 492 ; 4 McC. 198 ; and Dodwell vs. Gibbs, 5 Barn. *167 and Cress. 709. It is doubtful, upon inspection of the original deed, to which clause the unskilful draftsman has affixed the words at my death. Supposing them to belong to the habendum, when all precedent rules of construction have failed, resort may be had to the rule, that the first part of a deed and last part of a will shall prevail. But that is a rule of rare application, not exclusively relied upon in the final adjudication of either of the two cases last cited. Large and more sensible rules of construction require that the whole deed should be considered together, and effect be given to every part, if all can stand together consistently with law ; that an exposition favorable to the intention should be made, if not contrary to law ; that the intention should be regarded as looking rather to the effect to be produced than the mode of producing it; that too minute a stress should not be laid on particular words, if the intention be clear — and that, if the deed cannot operate in the mode contemplated by the parties, it should be construed in such manner as to operate, if possible, in some other way. Under these rules, the supposed repug-nancy between the premises and habendum, and the position of the defendants, that the deed is to be construed as an ordinary conveyance under our Act of 1795, and so void, as not operating by force of the statute of uses, are both avoided. . The authorities already cited, and many more cases decided since the statute of frauds required three witnessess to a will of lands, show that a deed, whether in form a feoffment, a bargain and sale, or a lease and release, if the-consideration of blood or marriage exist, may, to effect the intention of the parties, be construed to be a covenant to stand seized ; that give and grant are apt words for such covenant, and that it is the duty of courts, by reasonable construction, to give effect to the intention of parties not inconsistent with law. The deed in question is therefore a good covenant to stand seized to uses.
In conformity Ávith this view is the result of the case of Jenkins vs. Jenkins, 1 Mill. 48, although the question seems not to have been there considered; and Singleton. vs. Bremar, 4 McC, 12, is not opposed, for there, there was no consideration existing.
*168 The principal difficulty of this court has arisen from the case of Welch and Kinard, 1 Spears Eq. 256, lately decided by our court of Equity, and since recognized and confirmed by this court in the case of Crawford vs. McElvy, 2 Spears, 225, These cases, and previous ones mentioned in Welch and Kinard, related to slaves ; and even if they are to be held as establishing, that of slaves a conveyance upon consideration of blood or marriage only, to commence at the death of the grantor, must always be regarded as testamentaiy — they are no direct authority in relation to real estate. The statute of uses does not apply to slaves. By the ancient common law, the conveyance of a term or other chattel might have been made to commence in futuro, that is after a definite time, but not after a life estate, for a life interest was considered to be of longer duration than any chattel. Upon this principle the case of Vernon and Inabnit, 2 Brev. Rep. 411, (which is cited in Crawford vs. McElvy,) was decided, but the principle in general has long been inapplicable to limitations of slaves in this State; for ever since the case of Powell and Brown, 1 Bail. 100, if not long before, it has been well established here, that a remainder may be limited of a slave after a life estate. Indeed many cases in our court of Equity have held the same as to other chattels; see Patterson vs. Delvin, 1 McM. Eq. 559; Robertson vs. Collier, 1 Hill. Ch. 370. So far, indeed, have our courts gone in that direction, that by Hill vs. Hill, Dud. Eq. 71, it has been held that of slaves a fee may be limited upon a fee by deed, (neither a trust deed nor a marriage settle' ment, but an ordinary deed of gift from father to children,) which can be done as to lands, only by executory devise, or by limitation of trusts, or by the operation of future uses under the statute of uses.
Theancientrules as to limitations of chattels havebeenmuch modified in England, and the modifications have been here asually adopted and extended, especially in relation to slave property, which with us is usually estimated much more highly than our lands. But although courts may relax technical rules, so as to extend to chattels limitations which have grown up as to lands, under forms of conveyance applica- *169 cable only to the latter, courts cannot enact the guards which statutes have provided as to lands. If then it be true, as suggested in Welch and Kinard, that any disposition of personal property which may be effected by deed, may be made by parol accompanied by delivery, it is wise .to look to the consequences of every new indulgence accorded to the intention of parties in relation to personal property, before the Legislature may require the intention to be expressed by writing duly recorded. In the case before us, the deed of land was recorded three months after its execution ; a circumstance which seems conclusive of delivery, and which should always be much regarded in determining whether a paper is testamentary.
The cases decided as to personal property, seem not to contravene the rule of the common law, that conveyances of chattels may be made to commence at a future definite period, but seem to imply that such conveyances would be effectual, if limited to take effect on any other event than the death of the grantor; and even on that event if founded on a valuable consideration. Whether those cases are to be regarded as laying down an inflexible general rule, which shall govern all conveyances of personalty, without valuable consideration, to take effect at the death of the grantor, or as depending each upon its particular circumstances, is not now fio be determined. The last decision of Ingram and Porter seems to be opposed to such a gefleral rule ; and so does the case of Duke and Dyke,'Ms. decided two years afterwards by the same court which had decided Ragsdale and Booker, Ms — both of which last named cases are referred to in Welch and Kinard. Perhaps, upon consideration of the ambulatory nature of a will, the policy upon which the late discussions have been placed may not always require a deed conveying personalty, to take effect at the death of the grantor, founded only on consideration of blood or marriage, to be regarded as testamentary, where by due recording or other circumstance, its fairness and intended irrevocability may have been placed beyond doubt; especially if the case be such that the introduction of a peppercorn as consideration, would have taken the deed out of the. reason of the late decisions. But *170 however that maybe, this court does not feel authorized to apply to the deed of real estate now under consideration, the rule which in the cases cited was applied to the deeds of personalty there considered, when it is so plain that to violate the intention of the parties here, would be to violate well established principles of law. The plaintiffs have a right, for all that appears, to consider the deed in question as a covenant to stand seized. Their motion to set aside the nonsuit is therefore granted.
RichardsoN, Butler and Frost, JJ. concurred.